JOHN McCONNELL, appellant, *vs.* WILLIAM C. VAN AERMAN, respondent.

*It seems* the act of 1867, entitled "An act to prevent animals from running at large in the public highways," passed April 23d, 1862, "and to create a short bar to actions arising under said act," (*Laws of* 1867, *p.* 2036,) is constitutional, so far as it applies to animals taken up while thus running at large in the public highways. (*So held in Campbell* v. *Evans*, 54 *Barb.* 566, *Morgan, J., dissenting.*)

But the act, *it seems*, is unconstitutional, so far as it authorizes a private individual to seize and take into his custody animals found trespassing upon premises owned or occupied by him, to be disposed of under the provisions of the same act.

But whether so or not, if the owner of the animals thus trespassing upon the premises of another succeeds in driving them off before they are taken into the actual custody and control of the distrainor, his right to seize them under the authority conferred by the act no longer exists.

APPEAL from an order of the Lewis county court denying a new trial. The action was commenced in a justice's court, and after trial a verdict was rendered for the defendant. It was then appealed to the county court, and after hearing the evidence, the county judge nonsuited the plaintiff.

The action was in trover, for taking certain cattle out of the plaintiff's possession, which the plaintiff alleged he had seized and taken into possession under the provisions of chapter 418 of the laws of 1867, to prevent cattle running at large in the public highways.

The testimony shows that the plaintiff found the defendant's cattle on his lot, trespassing on him, and he immediately applied to a justice and made complaint, as required by the act of the legislature, and thereupon the justice issued his summons, which was posted up in six public places, as required by the act. On the return day, the plaintiff appeared and showed cause why the animals should be sold according to law. The defendant was present, but refused to appear. The plaintiff was sworn, and testified that he found the cattle trespassing upon his prem-

McConnell *v.* Van Aerman.

ises, and immediately went before the justice to enter his complaint; that he found the animals on his premises about seven or eight o'clock in the morning, but could not say how they came there. The justice thereupon issued his warrant, pursuant to the provisions of the said act, authorizing the constable to sell the said animals. The following is the constable's return to the warrant of sale :

"No cattle have been produced to be sold on the within warrant by the within named McConnell."

It appeared that the plaintiff did not shut up the cattle, but left them in the field while he proceeded to the justice's office to make his complaint. When he returned he found the defendant engaged in driving his cattle out of the lot. He then informed the defendant that he had seized them, and he tried to detain them, but the defendant defied him, and drove them home.

*A. J. Mereness,* for the appellant.

*C. E. Stevens,* for the respondent.

*By the Court,* MORGAN, J. This court has already decided, in a case recently before it, that the act of 1867, entitled "an act to amend an act to prevent animals from running at large in the public highways," passed April 23d, 1862, "and to create a short bar to actions arising under said act," (*Laws of* 1867, *p.* 2036,) was constitutional so far as it applied to animals running at large in the public highways by the fault or neglect of the owner.(*a*)

(*a*) The case referred to is *Campbell* v. *Evans,* since reported in 54 *Barb.* 566. But see next case, *Leavitt* v. *Thompson.*

It seems *Campbell* v. *Evans* goes further than is here supposed, and it may admit of doubt whether the doctrine of that case is not to some extent in conflict with *Leavitt* v. *Thompson* and *Rockwell* v. *Nearing.*

The first section of the act of 1867 declares it to be unlawful for any cattle, horses, sheep, swine and goats to run at large in any public street or highway, and makes it the duty of the overseer to seize and take into his custody any animal so found running at large. By the same section any person *suffering* or

I understand that case is pending in the Court of Appeals. From what I said in *Rockwell* v. *Nearing*, (35 *N. Y. Rep.* 302,) it may be inferred that I concurred in the decision of this court in sustaining the constitutionality of the act in question, so far as it relates to the seizure of animals thus found running at large upon the public highways. After considerable reflection, I could not, however,

*permitting* any animal to so run at large shall forfeit a penalty of $5 for every horse, swine or cattle, and $1 for every sheep or goat so found. These penalties may be recovered by *civil action* by any inhabitant of the town, in his own name or in the name of the overseers of the poor, *or by the proceedings thereafter mentioned.*

In a civil action there could be no recovery of these penalties of the owner of the animals, unless it could be shown that he was guilty of the offense of *suffering or permitting* his animals to so run at large in violation of the first section of the act.

It is a fair interpretation of the subsequent proceedings before a justice of the peace to say that the complaint, like the complaint in a civil action for the same penalties, must state the facts necessary to charge the owner with the guilt of the offense, before the justice could legally give judgment for the penalties. By the terms of the act, if there is no appearance on the return day of the summons, the sworn complaint would be sufficient to authorize the imposition of the penalty, in addition to the other allowances prescribed in section 3.

The complaint in *Campbell* v. *Evans* is not set out in the statement of the case, but there was no allegation that the animals were *permitted* by the owner " to run at large in violation" of the first section of the act. This point was taken on the argument by the counsel for the appellant, (54 *Barb.* 574;) but did not receive the consideration of the court in the published opinion of Justice BACON. Notwithstanding *there was no claim* that the owner was guilty of the offense of *suffering* or *permitting* his animals to run at large in the public highway, *or any proof of such an offense* before the justice, yet the owner in that case was fined $5 for each animal seized, amounting in all to the sum of $15. (*P.* 572.) But the appeal was not from this judgment; and if there had been an appeal, the appellate court could only review the *determination* of the justice that " cause exists or does not exist for the sale." Now sufficient cause exists for the sale by section 3, whether the animals were or were not running at large in the public highway by the *sufferance and permission* of the owner; and it may be a point of some nicety to determine whether the owner has, under the provisions of this act, any remedy against such an erroneous and unjust judgment of confiscation and sale; unless he is allowed to replevy his property, as he undertook to do in *Campbell* v. *Evans.* However this may be, the judgment before the justice in *Campbell* v. *Evans* included $3 to the com-

McConnell *v.* Van Aerman.

assent to the proposition; but I formed a very decided opinion that the machinery invented by the act of 1867 for depriving a man of his property is not *due process of law.* That was, I think, the opinion of Judge Porter in *Rockwell* v. *Nearing.* This objection applies to the act in all its provisions, and if well founded, would necessarily lead to an affirmance of the order of the county court. In case of

plaintant, (for each animal seized;) $5 costs of suit; and $3 to the justice, (for each animal sold,) making the allowances $15.50, besides the penalties prescribed in the first section of the act. Now these allowances, by way of gratuity to the complainant and to the justice, are held in *Rockwell* v. *Nearing* and *Leavitt* v. *Thompson*, to be penalties imposed upon the owner of the animals. Whether, therefore, the owner is guilty of the offense defined in the first section, or not guilty, the justice, in *Campbell* v. *Evans*, did right to include these allowances in his final judgment; for the act clearly authorizes and requires him to do so. It would seem, therefore, that so much of the act of 1867 as imposes these allowances or penalties upon the owner who *is not guilty of the offense of suffering his animals to run at large in the public highway,* cannot be sustained within the principle of the decisions in *Rockwell* v. *Nearing* and *Leavitt* v. *Thompson.* Whether it is competent for the legislature to impose a penalty in such a case is doubtless a question of some importance and difficulty; but as the legislature has not made it an offense in the owner, if his cattle, without his fault, stray upon the public highway, it is hardly to be presumed that he can be punished for it by the confiscation and sale of his property. And yet an act of the legislature requiring the owner of animals to secure them, so they could not stray upon the public highway, and inflicting a penalty in case of his neglect to do so, might perhaps be sustained. It is, however, quite evident that where there is no neglect of duty even in such a case, as where his fence is thrown down by a sudden wind, there can be no offense which the legislature can properly punish by the infliction of a penalty. The question, therefore, comes back to the point, whether an act of another, innocent in itself, can be punished by the legislature as an offense, according to the course of the common law and the due administration of public justice.

It is perhaps safe to say that the act of 1867 would be unobjectionable as an exercise of legislative power if it had stopped with the imposition of a penalty upon persons voluntarily or negligently permitting or suffering their animals to run at large into the public streets and highways; and, as to other cases where the act was involuntary or accidental, allowing the distrainor to keep the animals in some safe place until the owner paid a reasonable fee to the officer making the seizure, and the expenses of their keeping.

So far only as the legislature has gone beyond these acknowledged grants of power has its authority been called in question by the courts.

*strays,* a notice by advertisement is all that could be required; but when the parties reside in the same neighborhood, and there is no reason for omitting personal notice, or what is deemed equivalent in case of the temporary absence of the defendant, the common law required the defendant to be summoned or arrested and brought into court before he was convicted of any offense, or condemned in damages by which he might be deprived of his liberty or his property.

The service of the summons by advertisement, authorized by the act of 1867, is only permissible when the owner is unknown, or cannot be found. No such exigency could have existed in the mind of the legislature when it authorized the defendant to be summoned by an advertisement. This provision seems to be a deliberate departure from the requirements of the common law. Giving personal notice does not help the matter, as the act does not require it. But I will not pursue this branch of the case, as the question seems to be *res judicata* in this court.

There was no pretense here that the defendant's cattle were seized while running at large in the public highway. Under the former act, the provision allowing a seizure of animals trespassing upon another's land was decided to be unconstitutional. (*Rockwell* v. *Nearing, supra.*) The amended act of 1867 professes. to reimburse the complainant for his private damages in such a case, and provides for a trial by jury. It is supposed that these provisions obviate the objections to the former act. It may perhaps be said upon the authority of the case in this court that notice by advertisement posted up in six public places is due process of law to bring the defendant into court, as to which I have said all I think proper to say; but there are other objections to this provision, of a more serious character.

The second section of the act of 1862, as amended in

McConnell *v.* Van Aerman.

1867, declares that it shall be lawful for any person to seize and take into his custody, and retain till disposed of by law, "any animal which may be trespassing upon premises owned or occupied by him." The next step is for the complaint in writing, under oath, stating the facts, to a justice of the peace of the town in which such seizure occurred. The justice is thereupon declared to have jurisdiction to hear and determine such matter, and he is required to proceed in the same manner as in civil actions, except as specially changed by the said act. At this stage of the proceedings, nothing is however to be determined or adjudicated, for the very next paragraph requires the justice forthwith to issue his summons under his hand, stating the fact of such seizure and complaint, and requiring the owner, or any party having an interest in the same, to show cause before him why said animal should not be sold and the proceeds applied as directed by the said act. And on the return day the owner is allowed to appear and file an answer under oath denying any or all the facts alleged in the complaint, and an issue shall be deemed joined in the said proceedings, and the subsequent proceedings shall be as in civil actions, so far as they can be, unless otherwise provided in the said act. The issue thus joined is to be tried, and may be tried by a jury; and "if the jury or the justice shall find after a trial that no sufficient cause is shown why such sale should not be made, as directed by this act, then the justice shall issue his warrant," directing a sale by a constable, who is required to bring the proceeds into court and pay them over to the justice. "The said justice shall thereupon adjudge the costs of said proceedings * * * and in addition shall allow the party or officer making such seizure, for any horse or colt, one dollar; for any cow, calf or other cattle, each fifty cents; and for any goat, sheep or swine, twenty-five cents, *together with the actual damages sustained by such*

*party by reason of the trespass or breaking of such* animals into his premises, and a reasonable compensation to such person or officer, to be estimated by such justice, for the care and keeping of such animals from the time of the seizure thereof to the sale; and the *said justice shall be allowed the sum of* one dollar per each animal sold, and *the constable the same fees as for service of a summons and execution in said actions.*"

If these damages are to be assessed *after* a sale of the property, it is obvious that the defendant had no opportunity to appear and contest the amount; whereas by the rules of the common law, as well as by the constitution of this State, he has a right to be heard, and the right of a trial by jury.

If these damages are to be assessed by the court or jury *on the trial of the issue before* a sale is ordered, then it may be said that the defendant is not thereby deprived of his constitutional right of a trial by jury as to the damages.

The plain language of the act is that the justice is to assess the complainant's "actual damages" *after a sale of the property*, and after the proceeds of the sale are paid over to him by the constable. The issue to be tried before the justice or a jury does not include the question of damages. Nothing in the act contemplates that the complaint should set forth a claim for the damages, and the denial of the allegations of the complaint does not therefore involve any such question.

The complaint in the case at bar seems to have been drawn up in strict conformity to the requirements of section two of the act of 1862, as amended in 1867. It is as follows:

" Lewis County, Town of Greig, ss: John McConnell being duly sworn, complains and says, I have seized and taken into my possession one cow, yellow and white; one

McConnell *v.* Van Aerman.

bull, one pair of steers, which I found trespassing on lands occupied by me in the town of Greig.

JOHN McCONNELL.

Sworn and subscribed before } me this 24th day of July, 1867. }

J. D. SMITH, Justice of the Peace."

These are the facts required to be stated in the complaint, and the defendant is permitted to dény "any and all" of them on the return day of the summons, when "an issue shall be deemed joined in the said proceedings." If found for the complainant, the justice is to order a sale of the animals without regard to his damages. These are left to be assessed by the justice after the sale, and in the absence of the defendant. In my opinion the proceeding is not *due process* of law. I am also of opinion that the allowances to be made to the complainant and justice are to be regarded as penalties. They are no less so because the complainant's actual damages may be added to them. These allowances are the same as in the act of 1862, and it was held in *Rockwell* v. *Nearing* (35 *N. Y. Rep.* 302) that such penalties could not be imposed upon the owners of cattle for a mere private trespass. In both respects, therefore, the amended act of 1867, allowing any person to seize animals trespassing upon his premises to be disposed of in the manner and for the purposes therein declared, is clearly unconstitutional and void.

But there is another objection which may be regarded as fatal to the plaintiff's action. The act contemplates that the person seizing cattle thus trespassing upon his premises should get them into his *actual custody* before he is authorized to make his complaint before the justice. This act is doubtless to be construed strictly; and if the owner of the cattle sees them in another's field and purposely chases them out before they are taken into actual custody, under the provisions of the act, they are not liable

to seizure. (*Rockwell* v. *Nearing,* 35 *N. Y. Rep.* 302. 2 *Bacon Abr. title "Distress," F.*)

The case shows that the plaintiff made his complaint before he had taken the cattle into his actual custody, and that the defendant succeeded in driving them off from the premises before they were in fact seized by him and taken into his custody and control. The result was that the plaintiff never had the actual custody and control of the cattle, within the meaning of the act, so as to justify his subsequent proceedings.

The order should be affirmed with costs, and a new trial denied. All the judges concurring in the result,

Ordered accordingly.

[Adjourned GENERAL TERM, held at ROME, in December, 1869. *Bacon, Foster, Mullin* and *Morgan,* Justices.]

